## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Crim. No. ELH-12-0191** |
| | * | |
| **DERRICK WOODLON** | * | |
| | ********** | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTIONS TO SUPPRESS EVIDENCE AND STATEMENTS

Comes now the United States of America, by and through its counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Kenneth S. Clark, Special Assistant United States Attorney for said district, and responds in opposition to the Defendant's motions to suppress evidence and statements.

The evidence obtained during the search of 7 N. Woodington Avenue is admissible because the warrant for that location was supported by ample probable cause. Even were the warrant deficient, the fruits of the search conducted pursuant to it are admissible because the officers relied in good faith on it under *United States v. Leon*, 468 U.S. 897 (1984). Finally, officers provided the Defendant with his *Miranda* rights prior to any statements and both his waiver and subsequent statements were voluntary. As a result, his statements are admissible. The Defendant's motions should be denied.

## STATEMENT OF FACTS

### A.  August 2011 Undercover Purchase

On August 8, 2011 at approximately 9:30 am, an undercover Baltimore Police Department ("BPD") officer sought to make narcotics purchases in the area of the 1000 block of Boyd Street in Baltimore, Maryland.   (*See* Aug. 8, 2011 Incident Rpt., Woodland-000324 – 325 (Exh. 1).)   The officer entered the 1000 block of Boyd Street and saw an individual later identified as the Defendant, Derrick Woodlon, handing out small items in exchange for US currency.   The officer told Woodlon that he or she wanted "two" and Woodlon responded that he only had "one" left. The officer then handed Woodlon a twenty dollar bill that had been pre-recorded for identification purposes.   Woodlon handed the officer a white and blue gel capsule containing suspected heroin and change in the form of a ten dollar bill.

The officer then left the area and notified another team of BPD officers that he or she had made a positive purchase.   The officer also gave the arrest team a description of Woodlon and his last known location.   The arrest team located Woodlon at the corner of Schroeder Street and Lombard Street, approximately one block southeast of the location of the undercover purchase. The arrest team detained Woodlon and recovered the prerecorded twenty dollar bill from his right front pocket.   The undercover officer drove by the corner and confirmed that the individual detained was the same individual from whom he had just made a purchase.   Woodlon was arrested and transported to central booking.

### B.  November 2011 Search Warrant Execution

Following Woodlon's August 2011 arrest, BPD investigation into drug trafficking in the 1000 block of Boyd Street continued into Fall 2011.   This investigation included the arrest of

several individuals for drug trafficking in this area.   In addition, officers received information from confidential sources that Woodlon (who had since been on pretrial release from his August 2011 arrest) was supplying narcotics to the 1000 block of Boyd Street.   Officers learned that Woodlon used several vehicles to supply the narcotics, including a blue 4-door Cadillac sedan with MD registration 5AH0919.   Officers had seen Woodlon operating this vehicle.   Sources told officers that Woodlon moved the narcotics from a separate "stash" house to the 1000 block of Boyd Street, where they were distributed by other individuals.

During the week of November 14-18, 2011, officers conducted surveillance in the area and observed Woodlon arriving at the area in the blue Cadillac, leaving the vehicle briefly to enter the yard at 1022 West Lombard Street.   After he left, officers noticed an increase in the narcotics activity, consistent with the receipt of an additional supply of narcotics.   Officers then followed Woodlon back to 7 N. Woodington Avenue, Baltimore, Maryland, and saw him exit the vehicle and enter the house.   Based on the information gathered, officers believed this to be the Defendant's stash house.

Officers also searched the Maryland Department of Motor Vehicles records for the blue Cadillac and found that it was registered to a Ms. Mingtel Collins.   Officers found that Ms. Collins had been listed as a friend of Woodlon during his past three arrests.   Finally, officers also searched Woodlon's criminal record and found that he had five prior convictions for distribution or possession with intent to distribute controlled dangerous substances ("CDS"), in addition to the pending distribution charge from his August 2011 arrest.   In addition, they identified a number of additional convictions and arrests for possession of CDS.

On November 18, 2011, officers arrested a number of individuals operating the drug shop

3

in the 1000 block of Boyd Street.   Woodlon was not present at the time.

The same day officers also applied for and obtained a search and seizure warrant – issued by the Honorable H. Gary Bass of the District Court of Maryland, Baltimore City – for the suspected stash house at 7 N. Woodington Avenue.   (*See* Nov. 18, 2011 Search Warrant, Woodland-000342 - 353 (Exh. 2).)

BPD officers executed the warrant at 7 N. Woodington Avenue on the same day, at approximately 8:45pm.   (*See* Nov. 18, 2011 Incident Rpt., Woodland-000009 - 15 (Exh. 3).) After knocking and announcing "Police.   Search Warrant," officers received no response and used force to get in the front door.   They found Woodlon right by the front door and located two other individuals in the house – Ms. Nichole Holms (in the first floor, front room) and Ms. Mingtel Collins (in the second floor hallway).

Once all three individuals were secured in the first floor, front room, officers advised all of their *Miranda* rights and obtained verbal confirmation from each that they understood them. They agreed to speak with officers, who then asked if there was anything illegal in the house. Woodlon told officers that there was a gun under the mattress in the second-floor front bedroom. Ms. Collins indicated that there were also narcotics in shoe boxes in the same room.

During their search of the second floor front bedroom officers found a silver Interarms .357 caliber revolver under the mattress, fully loaded with 6 rounds of ammunition.   In the same bedroom, they also found two shoeboxes containing clear plastic bags of suspected cocaine and suspected heroin, a digital scale with white powder residue, and a number of other items with white residue, including hotel keys, playing cars, a strainer and a razor blade.   Subsequent lab testing confirmed that the materials in the shoe boxes included approximately 25 grams of cocaine

base, approximately 44 grams of heroin, heroin residue on strainers and spoons, cocaine and heroin residue on playing cards, and cocaine residue on a razor blade.   (Mar. 9, 2012 Drug Analysis Rpt., Woodland-000487-88 (Exh. 4).)   BPD labs also tested one of the shoe boxes and several of the plastic bags in the box, on which they found Woodlon's fingerprints.   (Mar. 7, 2012 Latent Print Rpt., Woodland-000480 – 486 (Exh. 5).)   In the closet of the second floor front bedroom, officers found a plastic bag containing approximately $26,636 in US currency.

From the basement, officers recovered two additional .357 caliber revolvers, both Smith & Wesson brand and both fully loaded.   A subsequent search revealed that one of these firearms had been stolen from South Carolina.   As a result of the searches and the information gathered, officers arrested Woodlon.

On April 5, 2012, a grand jury returned a five-count indictment against Woodlon, charging him with distribution of heroin and the possession with intent to distribute heroin and cocaine base, both in violation of 21 U.S.C. § 841(a), possession of a firearm and ammunition by a prohibited person, both in violation of 18 U.S.C. § 922(g), and use of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

The Defendant has filed motions to suppress the tangible evidence recovered during the search warrant and the statement he made at that time.   The Government opposes these motions and respectfully requests that they be denied.

**ARGUMENT**

**A. The Search of 7 N. Woodington Avenue Pursuant To A Valid Search Warrant Was Legal And The Evidence Obtained Pursuant To It Is Admissible.**

The Defendant has claimed in his motions that the evidence obtained during the search of 7 N. Woodington Avenue is inadmissible because the affidavit in support of the search warrant did not establish probable cause.   The affidavit in question, however, provided more than sufficient probable cause to support the search.   Moreover, the officers' reliance on the warrant, even if the probable cause supporting it were to be found lacking, was objectively reasonable pursuant to *United States v. Leon*, 468 U.S. 897 (1984).

**1. The Affidavit Supporting the Search Warrant Contained Ample Probable Cause.**

"Probable cause" exists where there is there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  It is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.

"The magistrate's probable cause determination is a 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (quoting *Gates*, 462 U.S. at 238).   "Because probable cause is evaluated through a 'totality-of-the-circumstances' analysis rooted in common sense, [the Court] 'must accord great deference to the magistrate's assessment of the facts presented."   *Id.* (internal citations omitted).

In *United States v. Hargis*, 37 Fed. Appx. 656, 658 (4th Cir. 2002) (unpublished), the

Fourth Circuit held that the warrant in question provided sufficient probable cause to support the warrant issued.   There, the warrant relied on an informant's claim that the defendant used a car to bring drugs to Garrison Avenue from another location.   *Id.*   In addition, officers had observed the defendant travelling back and forth between his home and the drug shop.   *Id.*   Finally, the officers opined that street-level dealers frequently store narcotics in their homes.   *Id.*

        This case is similar to *Hargis*.   Here, the officers also had information from a reliable source that the Defendant was moving narcotics from a "stash" house to a street shop.   (*See* Nov. 18, 2011 Search Warrant at Woodland-000348 (Exh. 2).)   As in *Hargis*, the officers were able to identify this "stash" house by following the Defendant from the street shop.   (*Id.* at Woodland-000348-49.)   Finally, officers opined that drug traffickers maintain a number of different items related to their business on hand – including US currency, records, drugs, and other contraband – in their homes or places of business.   (*Id.* at Woodland-000346.)   Here, however, the officers' surveillance also confirmed the informant's claim that Woodlon was supplying the Boyd Street drug shop.   (*Id.* at Woodland-000348-49.)   They observed the trafficking increase notably after Woodlon visited the shop briefly.   Thus, the information detailed in the warrant affidavit provides even more basis for probable cause in this case as was approved by the Fourth Circuit in *Hargis*.

        In *United States v. Williams*, 974 F.2d 480, 482 (4th Cir. 1992), the Fourth Circuit reversed the district court's suppression of a search warrant.   There, "[t]he affidavit submitted to the magistrate clearly establish[d] that Williams was a drug dealer.   The affidavit also contain[ed] evidence that Williams was currently residing in the Statesman Motor Lodge."   *Id.* at 481.   Based solely on that information, the Fourth Circuit found that there was sufficient probable cause to

search the defendant's motel room. *Id.* at 481-82.

Here, the affidavit contained far more probable cause to support the search at 7 N. Woodington Avenue. The information gleaned from the confidential sources and the observations of the officers, in addition to the numerous (and recent) arrests of the Defendant, clearly demonstrated that he was a drug dealer. (*See* Nov. 18, 2011 Search Warrant at Woodland-000348-50 (Exh. 2).) In addition, the officers had far more reason to believe that the Defendant was using 7 N. Woodington Avenue to store narcotics and/or proceeds from narcotics sales than was the case in *Williams*. Here, the officers knew that the Defendant had returned to 7 N. Woodington Avenue after the re-supplied the Boyd Street drug shop. In addition, their confidential sources had confirmed that the Defendant was using such a location as a "stash house." (*Id.* at Woodland-000348-49.)

Thus, Judge Bass properly concluded that there was "a fair probability that contraband or evidence of a crime" would be found at 7 N. Woodington Avenue. *See Gates*, 462 U.S. at 238. Evidence obtained pursuant to the lawful search of that location is admissible.

## 2.  The Officers Relied Upon The Warrant In Good Faith.

It is well established that, even where the court ultimately finds a warrant to be invalid, the fruits of the search conducted pursuant to that warrant should not be suppressed "unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *United States v. Leon*, 468 U.S. 897 (1984)). As the Supreme Court explained in *Leon*, "the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith within the scope of a search warrant issued

by a magistrate.'"   *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 920, 104 S.Ct. 3405).   Accordingly, under *Leon*'s good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'"   *Id*. (quoting *Leon*, 468 U.S. at 922, 104 S.Ct. 3405).).   Courts have found an officer's reliance on a warrant objectively unreasonable where: (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth; (2) the magistrate wholly abandoned his detached and neutral judicial role; (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.   *United States v. Hippolite,* 65 F.3d 1151, 1156 (4th Cir. 1995).

Here, reliance on the warrant was objectively reasonable.   There is no indication or assertion that the affiant provided false or misleading information to Judge Bass.   Further, there is no evidence that Judge Bass abandoned his neutral and detached role or that the warrant was facially invalid, i.e., that it failed to particularize the place to be searched or things to be seized. Further, "the warrant is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable."   *See United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993).   The warrant reflected information provided by a confidential source that the Defendant was supplying the street shop from a stash house, surveillance confirming the Defendant's role in supplying the street shop, and surveillance that identified the vehicle used by the Defendant and the stash house

9

to which he traveled after supplying his drug shop.   In fact, as noted above, the affidavit contained at least as much evidence supporting probable cause as was present in *Hargis* and *Williams*. Therefore, the evidence seized should not be suppressed, even were the Court to find the warrant invalid.

**B. Mr. Woodlon's Statements Are Admissible.**

The Defendant also claims that statements he made to police during the execution of the search warrant at 7 N. Woodington Avenue were obtained in violation of his rights and are, thus, inadmissible.   There is, however, no indication of any potential impropriety associated with these statements.

Statements made to law enforcement must comply with the requirements of *Miranda* and the Due Process clause of the Fifth Amendment Statements.   *Colorado v. Connelly*, 479 U.S. 157 (1986); *Miranda v. Arizona,* 384 U.S. 436 (1966).   Where *Miranda* rights have been waived, the analysis of the voluntariness of the *Miranda* waiver and the voluntariness of the statements under the Due Process Clause is the same.   *United States v. Christobal*, 293 F.3d 134 (4th Cir. 2002).

**1.      The Defendant's *Miranda* Rights Were Not Violated.**

*Miranda* warnings must be given prior to any custodial interrogation.   *Miranda v. Arizona*, 384 U.S. 436 (1966).   Here, officers provided Mr. Woodlon with *Miranda* warnings at the house before any interrogation, custodial or otherwise.   (*See* Nov. 18, 2011 Incident Rpt. at Woodland-000011 (Exh. 3).)   They also obtained confirmation from Woodlon that he understood the warnings and wished to speak with police.   (*Id.*)   It was only after these warnings and this confirmation that officers asked whether there was anything illegal in the house and Mr. Woodlon stated that "there was a gun under the mattress on the second floor front bedroom."   (*Id.*)   Thus,

Mr. Woodlon has no basis to claim a *Miranda* violation.

**2.     The Defendant's *Miranda* Waiver And Statements Were Voluntary.**

As the Supreme Court held in *Moran v. Burbine,* a defendant may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently."  *Burbine,* 475 U.S. 412, 421 (1986).   In order to be knowing and intelligent, the waiver must have been made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Christobal,* 293 F.3d at 139-140.   The test for determining whether a statement is voluntary under *Miranda*, "is whether the defendant's will has been overborne or his capacity for self-determination critically impaired."  *Id.* at 140 (quoting *United States v. Pelton,* 835 F.2d 1067, 1071 (4th Cir. 1987)).   To make this determination, courts must consider the "totality of the circumstances," including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.   *Pelton*, 835 F.2d at 1071.

Coercive police activity is a necessary predicate to a finding that a *Miranda* waiver was involuntary.  *Connelly*, 479 U.S. at 167.   Such coercion has been found where the suspect was subjected to severe physical abuse, *see Brown v. Mississippi*, 297 U.S. 278 (1936), held incommunicado and questioned for over 36 hours without sleep or rest, *see Ashcraft v. Tennessee*, 322 U.S. 143 (1944), given "truth serums," *see Townsend v. Sain*, 372 U.S. 293 (1963), or threatened with a loaded gun while wounded, *see Beecher v. Alabama*, 389 U.S. 35 (1967).   A deficient mental condition (whether the result of a pre-existing mental illness or, for example, pain killing narcotics administered after emergency treatment) is not, without more, enough to render a waiver involuntary.  *Christobal,* 293 F.3d at 141 (waiver given after the suspect had been shot multiple times, undergone emergency surgery and given pain killers and narcotics found to be

11

voluntary).   "While mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry."   *Connelly*, 479 U.S. at 165.

Here, the Defendant was questioned in his house.   At the time, Mr. Woodlon was thirty-two years old and had considerable experience in the criminal justice system.   He was neither injured nor impaired at the time of his statement to police.   Officers did not threaten him or try to trick him into providing information.   Rather, Woodlon appeared cooperative with the officers.   There does not appear to be any evidence of coercion, at any stage, such that Mr. Woodlon's "will ha[d] been overborne or his capacity for self-determination critically impaired." *See Christobal*, 293 F.3d at 140.

Likewise, Mr. Woodlon's statement after his *Miranda* waiver was also voluntary.   A statement that follows *Miranda* warnings will "[r]arely" be deemed involuntary.   *Dickerson v. United States*, 530 U.S. 428, 444 (2000).   As noted above, there is no indication whatsoever of any improper influence or anything else that would have overborne the Defendant's will.   Thus, he cannot claim that his statements were involuntary.   His motion to suppress statements should be denied.

## **CONCLUSION**

For all of the above reasons, the Government respectfully requests that the Defendant's motions be denied.

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney

By:_____/s/_____
Kenneth S. Clark
Special Assistant United States Attorney
36 S. Charles St., 4th Fl.
Baltimore, Maryland 21201
(410)209-4907

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2012, a copy of the foregoing Government's Response to Defendant's Motions To Suppress Evidence and Statements was electronically filed with notice to counsel of record:

> Scott Carter-Eldred
> Assistant Federal Public Defender
> 100 South Charles Street
> Tower II, Ninth Floor
> Baltimore, Maryland 21201

_____/s/_____
Kenneth S. Clark
Special Assistant United States Attorney

14